United States District Court
Southern District of Texas
**ENTERED**
August 08, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| Bernadette Renae Farris, § § § | |
| *Plaintiff,* § § | Civil Action No. 4:21-cv-01037 |
| v. § § | |
| Kilolo Kijakazi, § Acting Commissioner of Social § Security § § | |
| *Defendant.* § | |

## **MEMORANDUM AND RECOMMENDATION**

This is an appeal from an administrative ruling that denied Plaintiff Bernadette Renae Farris's request for social security benefits. After carefully considering the parties' briefs, the administrative record, and the applicable law, the Court recommends granting Defendant Kilolo Kijakazi's Motion for Summary Judgment (Dkt. 15) and denying Farris's Motion for Summary Judgment (Dkt. 14).

### **Background**

This appeal arises out of the denial of Farris's second application for social security benefits. Farris first filed for social security benefits on April 27, 2017, alleging that she became disabled on March 29, 2017. R.115, 131.[1]

---

[1] The administrative record, referenced as "R" herein, is filed as Dkt. 9.

Her claims were denied, initially and upon reconsideration, on August 8, 2017 and December 1, 2017. R.115. After a hearing, the administrative law judge (ALJ) issued a detailed decision on November 2, 2018, denying Farris benefits. *See* R.112-24. The ALJ found that Farris suffered from the severe impairments of multiple sclerosis and headaches, but that she was not disabled because she could still perform light and unskilled work. R.115-24.

Farris did not seek review of this ALJ's decision in federal district court. Instead, on February 7, 2019, Farris filed a new application for social security benefits based on her reported multiple sclerosis. R.24, 298. Her new application alleged a disability onset date of October 31, 2018, several days before an ALJ issued an adverse opinion on her first application. R.24. On May 9, 2019 and December 10, 2019 respectively, Farris's new claim was also denied initially and upon reconsideration. *Id.*

On May 28, 2020, a different ALJ held a hearing where Farris appeared to testify, represented by counsel. *Id.* Before the hearing, Farris submitted lengthy medical records, including records that would have been available prior to her first hearing. *See, e.g.*, R.385-445 (2017 medical records from Dr. Yvonne Kew, neurologist); R.447-76 (2017-18 medical records from Dr. Muhammad Khan, neurologist).

The ALJ questioned Farris briefly to clarify the record her counsel submitted concerning her work history. R.91-92. Farris testified that she has

2

not been fully employed since 2017, R.95, and had not worked at all since 2018, when she was a home healthcare provider, R.91-92. She also worked in retail as a cashier and department manager. R.91. In 2017, she was diagnosed with multiple sclerosis after she began experiencing blurry vision, headaches, fatigue, and issues walking and standing. R.94-95. In 2018, that diagnosis was confirmed by an MRI of her brain, which revealed demyelinating foci of multiple sclerosis. R.30, 500. She began treatment and regular visits with neurologists, with her most recent treatment recorded two months before the hearing. R.98-99.

Farris testified that her symptoms have worsened since her diagnosis, which is why she quit her prior employment. R.95. She testified that she continued to experience numbness in her extremities, R.97, blurriness and double vision that could not be corrected with lenses, R.102, and issues lifting weight above five pounds, R.100. But she also testified that she was still able to drive short to medium distances and cared for her children with the assistance of her extended family. R.103-04.

After Farris's testimony, the ALJ called a vocational expert (VE) to opine on the type of jobs that could be held by a hypothetical person of Farris's age, education, and work experience. R.35-36, 106-09. The VE testified that a hypothetical person like Farris could hold jobs such as a call out operator, an order clerk, or an address clerk. *Id.*

3

On June 9, 2020, the ALJ issued another unfavorable decision, finding that Farris did not qualify as disabled. R.24-36. The ALJ found that Farris had the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), 416.967(a). R.28. The RFC alco detailed additional limitations and capabilities:

> [Farris] cannot have any exposure to work place hazards such as unprotected moving mechanical parts, unprotected heights, or commercial driving. She can have only occasional exposure to extreme heat and cold. She *cannot perform work that requires precise depth perception, as she cannot make accurate judgments on distance or speed.* She can understand, remember, and carry out *simple, routine and repetitive tasks involving only simple work related decisions.* The claimant cannot work with any fixed production rate or pace work. Additionally, she requires the use of a cane.

R.28-29 (emphasis added). Given this RFC, the ALJ found that Farris could hold sedentary jobs that were available in the national economy, including the ones identified by the VE. R.35-36.

Farris unsuccessfully appealed the ALJ's decision to the Social Security Administration's Appeals Council, RR.1-4, which rendered the second ALJ's decision ripe for appeal to this Court. *See* RR.24-36. Farris has identified only one point of error in the ALJ's decision: that her RFC finding is not supported by substantial evidence. *See* Dkt. 14.

4

## **Standard of Review**

A reviewing court assesses the Commissioner's denial of social security benefits "only to ascertain whether (1) the final decision is supported by substantial evidence and (2) whether the Commissioner used the proper legal standards to evaluate the evidence." *Whitehead v. Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (per curiam) (internal quotation marks omitted). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept to support a conclusion.'" *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "'more than a scintilla, but it need not be a preponderance.'" *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) (quoting *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995)). When conducting its review, the Court cannot reweigh the evidence or substitute its judgment for the Commissioner's. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). "Conflicts of evidence are for the Commissioner, not the courts, to resolve." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005).

## **Analysis**

### I. **Legal Framework**

"The Commissioner uses a sequential, five-step approach to determine whether a claimant is ... disabled: (1) whether the claimant is presently performing substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment;

5

(4) whether the impairment prevents the claimant from doing past relevant work; and (5) whether the impairment prevents the claimant from performing any other substantial gainful activity." *Morgan v. Colvin*, 803 F.3d 773, 776 (5th Cir. 2015) (citing 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4)) (footnote omitted). Before moving from step three to four, the ALJ determines the claimant's residual functional capacity, which the ALJ uses to evaluate steps four and five. *Morgan v. Colvin*, 803 F.3d 773, 776 n.2 (5th Cir. 2015) (quoting 20 C.F.R. § 404.1520(a)(4)).

"Under this five-step approach, if the Commissioner determines at a prior step that the applicant is or is not disabled, the evaluation process stops ...." *Morgan*, 803 F.3d at 776 (citing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof at the first four steps. *Kneeland v. Berryhill*, 850 F.3d 749, 753-54 (5th Cir. 2017). At the fifth step, the burden of proof shifts to the Commissioner "to establish the existence of other available substantial gainful employment that a claimant can perform." *Id.*

II. **The RFC was supported by substantial evidence.**

Farris moved for summary judgment on the sole ground that the ALJ's RFC determination was not supported by substantial evidence. Dkt. 14 at 5-12. Farris argues that the RFC did not account for certain symptoms caused by her multiple sclerosis and, relatedly, symptoms that are side effects of her multiple sclerosis medication. Dkt. 14 at 7-10. Though Farris identified

6

myriad symptoms, her appeal primarily identified her extremity numbness and weakness, fatigue, and poor vision. *Id.* at 9-10.

An applicant's RFC is defined as "the most [an applicant] can still do despite [her] limitations." 20 C.F.R. § 404.1545. "The ALJ is responsible for determining an applicant's residual functional capacity." *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) (citing 20 C.F.R. § 404.1546); *see also* 20 C.F.R. § 404.1527(d)(2) (the Commissioner of the Social Security Administration is reserved the final responsibility for opinions, including the RFC). In determining the RFC, the ALJ examines all medical evidence in the record. *Webster v. Kijakazi*, 19 F.4th 713, 718 (5th Cir. 2021); 20 C.F.R. § 404.1545 (RFC is based on "all the relevant evidence in [an applicant's] case record").

Here, the ALJ found that Farris was capable of "sedentary work," as defined in 20 CFR §§ 404.1567 and 416.967. R.28. The ALJ also noted other limitations such as Farris's inability to be among workplace hazards and her need for a cane to stand and ambulate. R.28-29. Because the Court finds that the RFC was supported by substantial evidence in the record, Farris cannot sustain her point of error.

### A. The ALJ adequately considered Farris's weakness and numbness.

Farris does not identify particular limitations or abilities in the ALJ's RFC that she believes are inaccurate or unsupported. *See generally* Dkt. 14.

7

Rather, she argues generally that her fatigue and her extremity numbness and weakness were not considered. Dkt. 14 at 10. The RFC itself rebuts this argument, as the ALJ found that Farris could do only "sedentary work," provided that she avoids workplace hazards such as "unprotected moving mechanical parts, unprotected heights, or commercial driving" and she not be required to work "with any fixed production rate or pace work." R.28-29.

The ALJ referenced two regulations with identical definitions for "sedentary work":

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 CFR §§ 404.1567(a), 416.967(a). Thus, by deeming Farris fit to do only sedentary work, the ALJ classified her abilities into the lowest physical exertional level contemplated by the Code. *Id.* The ALJ also considered further limitations posed by Farris's inability to ambulate safely, noting potential physical hazards and the use of her cane. R.29.

Throughout 2019 and 2020, Farris's medical records reflect numerous doctor visits that support the ALJ's determination that she could work in accordance with her RFC. Contrary to Farris's account of her symptoms, *see* Dkt. 14 at 9-10; Dkt. 23 at 2, the ALJ identified numerous notes from

healthcare providers indicating that Farris had consistent, normal tone, strength, and sensation in her extremities:

- In March 2019, Farris was found to have normal muscle tone and motor strength, as well as normal gait and station. She also reported no fatigue and a regular activity level. R.552.

- In April 2019, Farris had a follow up appointment for an unrelated infection. The physical exam was similarly normal, and the provider even noted that she had "normal movement of all extremities. R.549. She reported having no fatigue and a normal activity level again.

- Later that month, Farris sought a consultation with Dr. Bhagwat Patel at Disability Determination Services to advise on her eligibility for disability. R.477-80. Dr. Patel observed that Farris could sit, stand, ambulate, and lift light objects. R.478. In her physical examination, he noted that Farris's extremities appeared normal, and she had full muscle strength in all her extremities—but with below-average reflexes. R.479. Dr. Patel's assessment of Farris was that "[s]he has mild symptoms of numbness and tingling of upper and lower extremities." R.480. And despite not being on any medication at the time, "[h]er symptoms are likely to get worse when [she] goes into relapse in the future." *Id.*

- In July 2019, Farris sought treatment for pain and weakness in her extremities. R.483-86. The doctor noted the purpose of her visit but measured the strength of every movement as 5 out of 5—including her hands, fingers, and wrists—though her reflexes remained below average. RR.484-85. Farris's gait, station, sensation, and coordination were normal. R.485.

- In August, October, and December 2019, Farris sought treatment for other symptoms related to her gastrointestinal and urinary systems. During these appointments, Farris was observed to be "well appearing," and no complaints about her extremities were noted. R.642, R.645, R.650.

- In February 2020, Farris began seeing a new neurologist. R.665-73. She reported that she was not on any medication for her multiple sclerosis, but that she did well with infusion therapy. R.669. Despite complaining of weakness and numbness, she was noted to have normal muscle tone

and sensation, and her gait was normal. *Id.* The doctor planned to restart her infusion therapy and follow up with her in six weeks. *Id.*

- In April 2020, at her last appointment before her hearing, Farris was prescribed medication for headaches, but still had not begun infusion therapy. R.666. The doctor did not note any abnormalities with her extremities or movement, and again planned to put her on infusion therapy. R.666.

Farris argues that the medical records indicate she repeatedly complained of issues with her muscle strength and numbness and that the ALJ wrongfully dismissed her subjective complaints. Dkt. 14 at 10. While Farris *reported* symptoms, substantial evidence supports the ALJ's determination that those symptoms "may not be accurately reported, may not exist at the level of severity assumed by the claimant's testimony at hearing and may have other mitigating factors." R.32.

Farris's healthcare providers conducted physical and visual examinations and consistently noted that her extremities were normal and she maintained full strength, albeit with below-average reflexes. Farris also reported that she was off medication with some frequency—during which time she was still found to have "normal" extremity function—but did well with at least one brand of infusion treatment. Thus, the relapsing nature of Farris's multiple sclerosis does not foreclose the ALJ from finding that it does not wholly eliminate her ability to work. *See Johnson v. Bowen*, 864 F.2d 340, 348 (5th Cir. 1988) ("If an impairment reasonably can be remedied or controlled by

10

medication or therapy, it cannot serve as a basis for a finding of disability."). Given Farris's medical records, the ALJ's conclusions about her weakness and numbness were adequately supported. The Court cannot reweigh the evidence. *See Brown*, 192 F.3d at 496.

Farris also argues that the ALJ did not appropriately weigh medical opinions when determining her RFC, and that the ALJ improperly relied only on the opinions of non-examining agency consultants, Dr. Roberta Herman and Dr. Charles Murphy. Dkt. 14 at 6. According to Farris, the ALJ's finding was "not supported by any physician of record." *Id.* This argument also lacks merit.

As described above, Farris sought treatment from healthcare providers of her choice, who repeatedly noted that her muscle tone and strength were normal. Moreover, the ALJ did *not* rely on Dr. Herman or Dr. Murphy without weighing their opinions. The ALJ explicitly found that Dr. Herman's opinion was not persuasive, "as the record contains documentation of physical deficits that would preclude [Farris'] ability to perform work at the full range medium level of exertion." R.32. Although the ALJ found Dr. Murphy's opinion that Farris could perform light work to be "somewhat persuasive," the ALJ discounted the opinion for failing to "take into account environmental or visual limitations that are well documented." *Id.* The ALJ's critical assessment of these consultants' opinions led him to find Farris could perform a *lower* level of physical exertion than they recommended—*i.e.,* sedentary work. Indeed,

11

this ALJ found Farris to be less physically capable of performing work than did Drs. Herman and Murphy—or even the ALJ who rejected Farris's original application. *See* R.118-19 (RFC from first ALJ opinion).

Accordingly, the ALJ's consideration of Farris's extremity issues, as reflected in the RFC, is supported by substantial evidence. While Farris's subjective reports of her symptoms appear throughout the record, the ALJ was entitled to resolve the conflict between her self-assessment and the healthcare providers' examination notes. *Perez*, 415 F.3d at 461.

**B.    The ALJ considered Farris's vision impairments.**

Farris also argues that the ALJ failed to account for her vision issues, including blurriness, floaters, and double vision. *See* Dkt. 14 at 6-7. The ALJ, however, noted that Farris's visual limitations "are well documented," R.32, and included a limitation in Farris's RFC that "[s]he cannot perform work that requires depth perception, as she cannot make accurate judgments on distance or speed." R.29. Farris argues that this limitation may be appropriate, but it "does not adequately accommodate for Plaintiff's light sensitivity and overall blurred vision which affects her ability to read, and drive." Dkt. 14 at 10-11.

Farris does not identify any limitation that may account for light sensitivity or blurriness, but that omission is immaterial given the medical record. As a preliminary matter, the ALJ's determination preempted this objection in part, as he already excluded commercial driving from Farris's

12

potential work responsibilities. R.29. In any event, there is record evidence that Farris can see well enough to drive and read in the amounts required for "simple, routine and repetitive tasks involving only simple work-related decisions," as set forth in the RFC. *Id.*

For example, when Farris began the application process a second time, she completed a Function Report where she disclosed that she could drive, go out alone, perform daily housework, and care for her children with some assistance from family. R.324-28. Farris also said that she could handle her own money, including managing her checkbook and money orders, in a way that was unaffected by her alleged disability. R.327-28. That initial self-assessment is consistent with the account she provided to Dr. Bhagwat Patel during an April 2019 disability assessment, where she reported being able to drive, shop for groceries, cook, and do housework. R.478-79. Likewise, in February 2020, Farris reported a loss and change in vision, but her doctor noted that she had "full visual fields to confrontation" and her "visual acuity" was "20/20 bilaterally." R.669. Finally, at the May 2020 hearing, Farris testified that she is still able to drive and maintain her household, R.103-04, and that she "can read but [she has] to put it up real close," R.102.

In light of these admissions, the ALJ adequately considered Farris's visual impairments when formulating the RFC. The ALJ's determination that

she could perform sedentary tasks with limited driving and repetitive, non-complex instructions is consistent with substantial evidence in the record.

*\*\**

Because Farris has failed to show that no "reasonable mind might accept" the ALJ's RFC findings regarding her extremities and visual capabilities, the ALJ's opinion should be affirmed. *Greenspan*, 38 F.3d at 236.

## Recommendation

Accordingly, the Court **RECOMMENDS** that Defendant's Motion for Summary Judgment (Dkt. 15) be **GRANTED** and that Plaintiff's Motion for Summary Judgment (Dkt. 14) be **DENIED.**

**The parties have fourteen days from service of this Report and Recommendation to file written objections. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to file timely objections will preclude appellate review of factual findings and legal conclusions, except for plain error.** ***Ortiz v. City of San Antonio Fire Dep't*, 806 F.3d 822, 825 (5th Cir. 2015).**

Signed on August 8, 2022 at Houston, Texas.

_____
Yvonne Y. Ho
United States Magistrate Judge

14